# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

**CHRIS REED**                                                                 **PLAINTIFF**

**VERSUS**                                        **CIVIL ACTION NO. 4:02CV287-P-B**

**CITY OF GREENWOOD, et al**                                          **DEFENDANTS**

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This case came on to be heard by the Court during a six day jury trial on Chris Reed's claims under 42 U.S.C. § 1983 against defendants Curtis Lee, Henry Harris and the City of Greenwood and certain state law claims against defendant Solomon Osborne. The parties presented contemporaneous evidence on the plaintiff's claim for damages under the Mississippi Tort Claims Act against the City of Greenwood.[1] After the jury returned its verdict, the Court took Reed's MTCA claim under advisement pending the parties' submission of post-trial briefs. Having considered all of the foregoing, the Court hereby enters the following findings of fact and conclusions of law:

### FINDINGS OF FACT

This is a claim for damages under the laws of the State of Mississippi which falls within the supplemental jurisdiction of the Court. This Court has jurisdiction to hear and decide this dispute by and between these parties. See 28 U.S.C. § 1331, 28 U.S.C. § 1367. Venue is likewise proper in this action as the events giving rise to the instant litigation took place within the confines of the

---

[1] The Mississippi Tort Claims Act requires that any state claim be determined by the Court in a bench trial, without a jury. Miss. Code Ann. § 11-46-13(1).

Northern District of Mississippi pursuant to 28 U.S.C. § 1391.

This Court's current exposition of the facts is limited to those relevant to the disposition of the MTCA claim.[2] Accordingly, the material events are those which followed Officer Curtis Lee's arrest of Chris Reed .

The testimony elicited at trial established that Officer Lee placed Reed under arrest, handcuffed Reed with his hands behind his back and placed Reed in his patrol car.[3] After a short time, the handcuffs began cutting into Reed's wrists. Reed signaled to Officer Avent to get his attention and asked Avent to loosen the handcuffs. Before Avent could do so, Officer Lee approached and told Avent to return to his car.[4]

Despite uttering a comment to the effect that the handcuffs were not too tight, Lee instructed Reed to turn around in the backseat, presumably so he could adjust the handcuffs. Lee had difficulty doing so; he then instructed Reed to get out of the vehicle.

Numerous witnesses testified to the sequence of events which followed. After considering and weighing the various versions of events offered by each of the witnesses, the Court finds that the credible evidence supports a finding that Reed scooted out of the vehicle backwards with Officer Lee's assistance. While it is probable, and this Court so finds, that Officer Lee employed a certain degree of physical force in assisting Reed from the vehicle, the Court does not conclude that his

---

[2] As noted in the Conclusions of Law infra, the MTCA claim is limited to the issue framed in the Pretrial Order entered March 17, 2006.

[3] Daniel Floyd testified that prior to Reed's arrest, Officer Lee appeared frustrated due to his inability to successfully clear the roadway and resolve a civil dispute between Reed and another Solomon Osborne. Despite plaintiff's effort to infer that Officer Lee's exasperation affected his actions at the time of Reed's exit from the vehicle, the record is devoid of any evidence to support such a finding.

[4] Officer Avent did so.

2

effort was intentionally excessive or ill-willed. Instead, the force exerted, when combined with Reed's additional exertion[5], propelled both men backwards unexpectedly. Officer Lee tripped over the curb and both men fell to the ground, causing Reed to strike his head on the pavement.[6]

---

[5] Officer Lee testified that Reed gave a "big push" backwards.

[6] Numerous witnesses including Chris Reed and Officer Lee offered testimony concerning the above-described incident with varying degrees of corroboration. The testimony of the individual witnesses was to the following effect:

Tom Chism testified that he was standing twenty to thirty yards away outside his father-in-law's shop. He characterized Reed as having been "yanked out" of the car; the basis for his testimony was that he saw Officer Lee's elbows come up over the car; Officer Lee and Reed fell to the ground. However, on cross-examination, Chism admitted that Officer Lee's raised elbows could be attributable to Lee tripping and falling.

A second witness, Daniel Floyd, testified to similar effect. He maintained that Officer Lee grabbed the handcuffs and pulled back on them, causing Chris to fall out of the back of the patrol car while Officer Lee laughed and moved out of the way. Floyd's testimony is problematic for several reasons. First and foremost, Floyd is a convicted felon. Furthermore, his felony conviction related to the making of a false statement, thereby limiting his credibility. In addition, Floyd admitted his longstanding prior acquaintance with Reed, a factor which further detracts from his believability. Finally, Floyd testified to a version of events not corroborated by any of the other eye witnesses, e.g., that Officer Lee laughed at Reed's misfortune and that he avoided falling himself.

Reed himself ascribed varying motives to Lee's conduct at the time. At the trial, he maintained that his initial fall resulted from Lee pulling too hard on the handcuffs during Reed's exit from the patrol car. He characterized Lee's actions as intentional, a position which conflicted with Reed's early deposition testimony to the effect that Lee acted negligently. With regard to the second fall, Reed's trial testimony was consistent with that of his deposition–e.g., Officer Lee tried to pick Reed up by grabbing him by the shirt sleeve and accidentally dropped him a second time.

Officer Lee testified at trial that he did <u>not</u> yank Reed out of the car; instead, Reed gave a "big push" that caused Reed to fall on top of him; he testified that both men fell two times.

The final two eyewitnesses, Crystal Chism and Janet Spain, testified that they had a clear view of the sequence of events inasmuch as they were standing only a few feet away from the patrol car and with no obstructions. Ms. Chism testified that the Officer Lee trip to help Reed out of the car; in doing so he took hold of Reed's right arm as Reed scooted out of the car

3

Officer Avent noticed the incident and went back to help Lee get Reed to his feet. The two officers pulled Reed up but before he was fully upright he fell and struck his head on the curb again. The officers assisted Reed to his feet again and then removed his handcuffs. Reed then requested an ambulance.[7][8]

CONCLUSIONS OF LAW

I.  Pretrial Order and Adjudication of the MTCA Claim

Plaintiff's counsel submitted a detailed post-trial brief in which he articulated a number of state law theories in support of recovery under the Mississippi Tort Claims Act. Specifically, the brief asserts a right of recovery under theories of false arrest, false imprisonment, "constitutional torts" and on the basis that Officer Lee acted in reckless disregard for the safety and well-being of Chris Reed when he pulled him from the patrol car to loosen his handcuffs.

However, notwithstanding plaintiff's assertions, the express terms of the Pretrial Order prepared and submitted by the parties limits the nature of Reed's MTCA claim to a single issue: that of whether the municipal defendant is liable "for a state law claim of reckless disregard related

---

backwards and that Officer Lee tripped on the curb, causing both men to fall. Chism recollected that Reed had at least one foot on the ground when he fell. She, too, noted that Reed fell a second time.

Likewise, Ms. Spain testified to the same effect. She indicated that she saw Lee holding Reed under the arms; then both men fell backwards and Reed landed between Officer Lee's legs.

[7] Reed was transported to the hospital emergency room. The hospital staff examined him and ran a few tests, after which time Reed was released. After leaving the hospital, Reed went to the police department in order to file a complaint against Officer Lee and Solomon Osborne

[8] Plaintiff also presented a great deal of testimony relative to the issue of damages. However, in view of the Court's resolution of the liability issue, infra, a long recitation of that evidence is not necessary.

4

solely to Office Lee pulling [p]laintiff from the patrol car to loosen his handcuffs and allowing him to drop hitting his head." Pretrial Order at p. 2. That Order, entered March 17, 2006, plainly states: "The pleadings are amended to conform with this Pretrial Order" and "[t]his Order will control the course of the trial . . . and it may not be amended except by consent of the parties and the court, or by order of the court to prevent manifest injustice." See Polles v. Federal Deposit Ins. Corp., 749 F. Supp. 136, 139 (N.D. Miss. 1990).

Contrary to plaintiff's representation subsequent to trial, the additional state law claims pressed by plaintiff were not tried by the consent (implicit or explicit) of the parties and the court. Furthermore, post-trial amendment of the Pretrial Order would not operate to prevent manifest injustice. Instead, it would impose a manifest injustice on the defendants if the Court were to permit plaintiff to advance claims by way of post-trial briefing that he voluntarily relinquished in drafting the Pretrial Order.[9] Accordingly, the sole issue to be decided by the Court is whether Officer Lee's conduct, as described supra, constituted reckless disregard for the safety and well-being of Reed.

II.  Law Applicable to the MTCA Claim

The MTCA governs Reed's state law claim against the City and provides the exclusive remedy. Miss. Code Ann. 11-46-7(1). See also L.W. and J.A. v. McComb Separate Municipal School District, 754 So.2d 1136, 1138 (Miss. 1999).

The provisions of Miss. Code Ann. § 11-46-5 operate as a legislative waiver of immunity

---

[9] This is especially true inasmuch as the plaintiff's post-trial brief urges the Court to apply differing legal standards to the state law claims of false arrest and false imprisonment as compared to the law under which the jury decided the similar federal claims. Had the municipal defendant been given notice of the additional state law claims now pressed by plaintiff, the City may have altered its presentation of proof on those issues to address the additional evidentiary burdens attendant thereto.

for certain torts committed by the state, its political subdivisions and employees thereof:

> (1) Notwithstanding the immunity granted in Section 11-46-3, or the provisions of any other law to the contrary, the immunity of the state and its political subdivisions from claims for money damages arising out of the torts of such governmental entities and the torts of their employees while acting within the course and scope of their employment is hereby waived . . .; provided, however, immunity of a governmental entity in any such case shall be waived only to the extent of the maximum amount of liability provided for in Section 11-46-15.
>
> (2) For the purposes of this chapter an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense other than traffic violations.
>
> (3) For the purposes of this chapter and not otherwise, it shall be a rebuttable presumption that any act or omission of an employee within the time and at the place of his employment is within the course and scope of his employment.
>
> . . .

Miss. Code Ann. § 11-46-5.

Despite the seemingly broad nature of the language employed in § 11-46-5, the scope of the waiver is restricted by a number of statutory exemptions to tort liability expressed in § 11-46-9. The exemption set forth in § 11-46-9(1)(c) is of special significance. It provides:

> (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim
>
> . . .
>
> . . .
>
>   (c) Arising out of any act or omission of an employee of a governmental entity engaged in the performance of execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury . . . .

Miss. Code Ann. § 11-46-9(1)©.

At bottom, the City's liability under the MTCA turns on whether Officer Lee acted in reckless disregard of Reed's safety and well-being when he pulled Reed from the patrol car to loosen his handcuffs. The Act does not define "reckless disregard." However, the Mississippi Supreme Court has held it to impose a higher standard than gross negligence , embracing "willful or wanton conduct which requires knowingly and intentionally doing a thing or wrongful act." Maye v. Pearl River County, 758 So.2d 391, 394 (Miss. 1999). In determining whether a police officer's conduct rose to the level of reckless disregard, the focus of the inquiry is "whether the officer intended to do the act that caused harm to come to the plaintiff." Turner v. City of Ruleville, 735 So.2d 226, 230 (Miss. 1999). In particular, it must appear that the officer's "conduct evinced not only some appreciation of the unreasonable risk involved, but also a deliberate disregard of that risk and the high probability of harm involved." Bradley v. McAllister, 929 So.2d 377 (Miss. Ct. App.) (quoting from Maldonado v. Kelly, 768 So.2d 906, 910-11 (Miss. 2000)).

Applying the law to the findings of fact set forth supra, this Court concludes that Officer Lee's conduct did not demonstrate either malice[10] or willful action consistent with the knowing and intentional commission of a wrongful act. Instead, as indicated by this Court's findings of fact, the incident was entirely accidental. Reed's injury was precipitated, not by premeditated wrongful conduct on the part of Officer Lee, but by fortuitous circumstances which unfolded both suddenly and unexpectedly. In view of those facts, it is simply impossible for this Court to conclude that Officer Lee acted with reckless disregard for Reed's safety and well-being. In the absence of such

---

[10] A finding of malice on the part of Officer Lee would also have foreclosed any possibility of recovery against the municipality. Miss. Code Ann. § 11-46-5(2).

7

a finding, the municipality is not liable under the Mississippi Tort Claims Act.[11]

This, the 8th day of February, 2008.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE

---

[11] The Court's conclusion on the issue of reckless disregard obviates the need for the Court to consider whether Reed was engaged in criminal conduct at the time of the incident. See Miss. Code Ann. § 11-46-9(1)(c).